#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ETTI BITON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-968-SLP |
| | ) |
| JEFFREY JACKSON, | ) |
| | ) |
| Defendant. | ) |

### **O R D E R**

Before the Court is the Motion for Default Judgment [Doc. No. 13], filed by counsel for Plaintiff, Ge'Andra Johnson, prior to her withdrawal from representation.[1] In addition, pursuant to the Court's Orders, [Doc. Nos. 14, 22], Plaintiff filed a supplemental Affidavit in Support of Damages Calculation [Doc. No. 23].[2] To date, no response has been filed by Defendant, nor has he otherwise participated in this action. For the reasons set forth below, the Court finds default judgment should be entered, and the Motion is GRANTED.

**I.   Background**

Plaintiff brings this action against her former husband seeking immigration financial support pursuant to 8 U.S.C. § 1183a. *See generally* Compl. [Doc. No. 1]. Plaintiff seeks a judgment ordering Defendant to pay spousal support under an I-864 Affidavit of Support.

---

[1] After the Motion was filed, Plaintiff filed a letter expressing her intent to proceed pro se and requesting that counsel withdraw from representation. *See* [Doc. No. 15]. Counsel has subsequently withdrawn, *see* [Doc. Nos. 19, 20], and Plaintiff proceeds pro se.

[2] The first Affidavit [Doc. No. 16] was unsigned and unsworn, *see* Order [Doc. No. 22], and Plaintiff submitted a supplemental Affidavit which complies with 28 U.S.C. § 1746. *See* [Doc. No. 23].

*See id.* ¶¶ 2-3, 14, 79-87.  Defendant was served on December 6, 2023.  *See* [Doc. No. 3]. Defendant failed to answer or otherwise respond to the Complaint, and the Clerk of Court entered default on April 17, 2024, pursuant to Federal Rule of Civil Procedure 55(a).  [Doc. No. 12].  Plaintiff now seeks default judgment pursuant to Rule 55(b).

## II.   Governing Law

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default judgment.  First, a plaintiff must apprise the court that the opposing party has "failed to plead or otherwise defend" by "affidavit or otherwise" and request the clerk to "enter the party's default."  Fed. R. Civ. P. 55(a).  Second, the party obtaining a default must "apply to the court for a default judgment."  *See* Fed. R. Civ. P. 55(b)(2).  The first procedural step has been satisfied: as stated, the Clerk of Court entered default against Defendant after he failed to answer or otherwise defend.  [Doc. No. 12].

The Court now considers the second procedural step.  A default judgment is not automatic.  Even after entry of default against a defendant, "'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'"  *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (citations omitted).  When deciding a motion for default judgment, the court must accept as true the well-pleaded factual allegations of the complaint. *Mathiason v. Acquinas Home Health Care, Inc.*, 187 F.Supp.3d 1269, 1274 (D. Kan. 2016); *see also Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016)  (in the event a party is in default, the plaintiff is "relieved . . . from having to prove the complaint's factual

allegations."). Ultimately, the entry of a default judgment is committed to the sound discretion of the trial court. *Tripodi*, 810 F.3d at 764.

"If [a] defendant does not contest the amount prayed for in the complaint [by failing to answer] and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing." *United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (internal quotation marks and citations omitted); *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) ("[A] court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation.").

## III. <u>Analysis</u>

### A. **Jurisdiction**

The Court has engaged in a review of its jurisdiction over both the subject matter of Plaintiff's Complaint and the parties as required upon a motion for default judgment. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). The Court is satisfied that both subject matter jurisdiction and personal jurisdiction exist.

The Court finds that it has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the federal Immigration and Nationality Act. *See* 8 U.S.C. § 1183a(e)(1) ("An action to enforce an affidavit of support . . . may be brought against the sponsor in any appropriate court . . . by a sponsored alien, with respect to financial support"); *see also Nevarez v. Nevarez*, 664 F. Supp. 3d 680, 686–88 (W.D. Tex. 2023) (discussing and adopting "the majority view that an action to enforce an affidavit of support arises under federal law, and that federal courts therefore have subject

matter jurisdiction over such cases."); *Wenfang Liu v. Mund*, 686 F.3d 418, 419 (7th Cir. 2012), *as amended* (July 27, 2012) (finding this kind of action "arises under federal law, making the federal district court an 'appropriate court' in which to bring the suit.").

The Court also has personal jurisdiction over Defendant because "[e]ach individual who signs an affidavit of support attachment agrees . . . to submit to the personal jurisdiction of any court that has subject matter jurisdiction over a civil suit to enforce the contract or the affidavit of support." 8 C.F.R. § 213a.2(c)(2)(i)(C)(2); *see also* 8 U.S.C. § 1183a(a)(1)(C) ("the sponsor agrees to submit to the jurisdiction of any Federal or State court for the purpose of actions brought under subsection (b)(2)"); *Skorychenko v. Tompkins*, No. 08-CV-626-BBC, 2009 WL 3126379, at *3 (W.D. Wis. Sept. 28, 2009) ("By signing the affidavit, a sponsor submits himself to the personal jurisdiction of any federal or state court in which a civil lawsuit has been brought to enforce the affidavit."); *Flores v. Flores*, 590 F. Supp. 3d 1373, 1379 (W.D. Wash. 2022) ("By signing the I-864 Affidavit of Support, Defendant submitted himself to the personal jurisdiction of any federal or state court in which an enforcement lawsuit is brought."); *Al-Aromah v. Tomaszewicz*, No. 7:19-CV-294, 2019 WL 4306970, at *2 (W.D. Va. Sept. 11, 2019) (same); *Wang v. Tavernier*, No. 13 CIV. 4296 (PGG), 2014 WL 11353150, at *4 (S.D.N.Y. Sept. 26, 2014), *aff'd sub nom. Fen Wang v. Tavernier*, 621 F. App'x 83 (2d Cir. 2015) ("[B]y signing the Form I–864, Defendant waived any objection he might have had to this Court's exercise of personal jurisdiction over him.").

B. **Venue**

The Court further finds venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. *See* Compl. [Doc. No. 1] ¶¶ 7-8, 41; *see also* 28 U.S.C. § 1391(b)(1)-(2). Moreover, due to Defendant's default, any defect in venue is waived. *See Williams*, 802 F.2d at 1202.

C. **Allegations of the Complaint**

Plaintiff is a citizen of the country of Israel and a lawful permanent resident of the United States. Compl. [Doc. No. 1] ¶ 11. Defendant is Plaintiff's ex-husband and is a citizen of the United States. *Id.* ¶ 13. In April of 2014, the parties were married in Comanche County, Oklahoma. *Id.* ¶ 41. Prior to their marriage, Plaintiff was present in the United States pursuant to a temporary visitor B1-B2 visa. *See id.* ¶¶ 42-43.

After the parties were married, Defendant began the process of securing lawful permanent residency for Plaintiff. *See id.* ¶ 44. As part of that process, Defendant signed an I-864 Affidavit of Support by which he agreed to provide Plaintiff "any support necessary to maintain ... her at an income that is at least 125 percent of the Federal Poverty Guidelines for . . . her household size." *Id.* ¶¶ 2, 14, 22, 45-66; *see also* Signed Form I-864 [Doc. No. 16-1]. Upon completion of the I-864 Affidavit of Support and other matters, Plaintiff obtained lawful permanent resident status. Compl. [Doc. No. 1] ¶ 65.

Plaintiff and Defendant separated in January of 2020. *Id.* ¶ 67; *see also* Supp. Aff. [Doc. No. 23] at 4. Since their separation, Plaintiff has not received the full amount of financial support—i.e., 125 percent of the Federal Poverty Guidelines—for a household

5

size of one person. *Id.* ¶¶ 70-71. In particular, Plaintiff has set forth her income for each calendar year since the parties' separation, and the amounts are below 125 percent of the Federal Poverty Guidelines for each year in question. *See* Supp. Aff. [Doc. No. 23] at 4. To date, Defendant continues to fail to fulfill his obligation under the I-864 Affidavit of Support. *See id.* at 2; *see also* Compl. [Doc. No. 1] ¶¶ 3, 70, 78, 86.

Defendant's financial support obligation terminates only if Plaintiff: (1) becomes a U.S. citizen; (2) works or receives credit for 40 qualifying quarters of coverage under the Social Security Act; (3) loses their status as a lawful permanent resident and departs the United States; (4) becomes the subject of a new affidavit of support; or (5) dies. *See* 8 U.S.C. § 1183a(a)(2)-(3); 8 C.F.R. § 213a.2(e)(2)(i); *Li Liu v. Kell*, 299 F. Supp. 3d 1128, 1131 (W.D. Wash. 2017). Since their separation, and through present day, none of those events have occurred. Compl. [Doc. No. 1] ¶¶ 72-78. Accordingly, Defendant's obligations under the I-864 Affidavit of Support remain in effect.

### D. Relief Requested

Plaintiff seeks $53,420.25 in unpaid spousal support from January of 2020 through November of 2024, and "[a]n order of specific performance, requiring Defendant to make monthly payments to Plaintiff" in an amount equal to 125 percent of the applicable Federal Poverty Guidelines, less her qualifying income, "until such time as a [t]erminating [e]vent occurs." *See* Compl. [Doc. No. 1] at 11-12; *see also* Supp. Aff. [Doc. No. 23] at 2-3.

The I-864 Affidavit of Support establishes a binding contract between the sponsor and the United States for the benefit of the immigrant spouse. *Erler v. Erler*, 824 F.3d 1173, 1175 (9th Cir. 2016) (citing 8 U.S.C. § 1182(a)(1); 8 C.F.R. § 213a.2(d)). An order

6

for specific performance is an available remedy to enforce an I-864 Affidavit of Support, in addition to "corresponding remedies available under State law." 8 U.S.C. § 1183a(c). To determine Plaintiff's damages for unpaid spousal support, the Court subtracts Plaintiff's annual income for each year from 125 percent of the applicable Federal Poverty Guideline. *See Flores*, 590 F. Supp. 3d at 1380 ("To determine Plaintiff's damages, the Court must calculate Plaintiff's income and then reduce that income from the 125 percent poverty threshold amount for the relevant period."); *see also Echon v. Sackett*, No. 14-CV-03420-PAB-NYW, 2018 WL 2087594, at *3 (D. Colo. May 4, 2018) ("In calculating a defendant's liability for breach of his or her support obligations under an I–864 affidavit, courts have consistently deducted income received by the plaintiff during the relevant time period.").

Pursuant to prior Orders of the Court, [Doc. Nos. 14, 22], Plaintiff has supplemented her motion with an Affidavit setting forth her income for each year in question, which includes "VA benefits" and spousal support paid by Defendant. *See* [Doc. No. 23] at 4.[3] Based on Plaintiff's submission, her unpaid spousal support for each year is as follows:

- 2020: $13,638.00 ($15,950.00 minus $2,312.00 spousal support);

- 2021: $10,900.00 ($16,100.00 minus $5,200.00 VA benefits and spousal support);

---

[3] Plaintiff includes "VA benefits" in her calculation of "actual income," but she maintains "public benefits" she received for food and utility assistance "do not count as income and [do not] relieve the sponsor's financial obligation." *Id.*; *see also* Aff. from Counsel [Doc. No 13-1] at 3 (referring to the VA payments as "qualifying income"). Accordingly, based on Plaintiff's representations, the Court counts the VA benefits as income and reduces the amounts owed based on the $200.00 per month she receives. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

- 2022: $2,587.50 ($16,987.50 minus $14,400.00 VA benefits and spousal support);

- 2023: $10,825.00 ($18,225.00 minus $7,400.00 VA benefits and spousal support);

- 2024: $16,425.00 ($18,825.00 minus $2,400.00 VA benefits).[4]

*See id.*; *see also* Annual HHS Poverty Guidelines and Federal Register References, available at https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines/prior-hhs-poverty-guidelines-federal-register-references (last visited January 6, 2025).[5]

Accordingly, the total amount of unpaid spousal support through the end of 2024 is $54,375.50.[6]  *See id.*  The current amount owed per month based on the 2024 Federal Poverty Guidelines is $1,568.75.  *See* 2024 Annual Update of HHS Poverty Guidelines, 89 Fed. Reg. 2962 (Jan. 17, 2024), available at: https://www.federalregister.gov/documents/2024/01/17/2024-00796/annual-update-of-the-hhs-poverty-guidelines  (last visited January 6, 2025).

For the reasons set forth above, the Court finds judgment should be entered in favor of Plaintiff in the amount of $54,375.50.  The Court further finds an order of specific performance is warranted, and Defendant shall make monthly payments to Plaintiff in the

---

[4] Plaintiff's supplemental Affidavit is current through November 2024, and she receives $200 per month in VA benefits.  *See* [Doc. No. 16] at 2-3.  Accordingly, based on that monthly VA payment, the Court added $200.00 to the income Plaintiff listed for 2024.  *See id.*

[5] The Court may take judicial notice of information published on government websites.  *See Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1297 n. 4 (10th Cir. 2017).

[6] As noted, Plaintiff's calculation runs through November of 2024, *see* Supp. Aff. [Doc. No. 23] at 2, but the Court's total reflects the amount owed through December 2024.  It also appears Plaintiff included (or requested) costs in her calculation, *see id.* at 4, which she may separately seek after entry of judgment.  *See* Fed. R. Civ. P. 54(d).

amount of 125 percent of the applicable Federal Poverty Guidelines for a household of one, less any income earned by Plaintiff, until Plaintiff: (1) becomes a U.S. citizen; (2) works or receives credit for 40 qualifying quarters of coverage under the Social Security Act; (3) loses her status as a lawful permanent resident and departs the United States; (4) becomes the subject of a new affidavit of support; or (5) dies.

## IV.  Conclusion

IT IS THEREFORE ORDERED as follows:

1. Plaintiff's Motion for Default Judgment [Doc. No. 13] is GRANTED.

2. Default Judgment is entered against Defendant Jeffrey Jackson in the amount of $54,375.50.

3. Defendant shall make monthly payments to Plaintiff in the amount of 125 percent of the Federal Poverty Guidelines for a household of one (currently $1,568.75), less any income earned by Plaintiff (currently $200.00), until Plaintiff: (1) becomes a U.S. citizen; (2) works or receives credit for 40 qualifying quarters of coverage under the Social Security Act; (3) loses her status as a lawful permanent resident and departs the United States; (4) becomes the subject of a new affidavit of support; or (5) dies.  When updated Federal Poverty Guidelines are published each year, Defendant shall issue payment in accordance with the updated Guidelines beginning in "the second month after the date the guidelines are published in the Federal Register." *See* 8 C.F.R. § 213a.1

4. Defendant shall transmit monthly payments to Plaintiff by wire transfer or other electronic payment means on or before the fifth business day of each calendar month.

5. Except for the $200.00 per month in VA benefits she currently receives, Plaintiff shall provide Defendant written notice of any and all income she receives before the first business day of the next month, so that Defendant may reduce the monthly payment by that amount. In the event Plaintiff ceases receiving the VA benefits, she shall provide Defendant written notice that she is no longer receiving VA benefits before the first business day of the next month, so that Defendant may include that amount in the monthly payment.

6. Plaintiff (or an agent or representative of Plaintiff) shall provide Defendant written notice that his I-864 Affidavit of Support obligation has ended if she: (1) becomes a U.S. citizen; (2) works or receives credit for 40 qualifying quarters of coverage under the Social Security Act; (3) loses her status as a lawful permanent resident and departs the United States; (4) becomes the subject of a new affidavit of support; or (5) dies. Plaintiff shall do so within thirty (30) days of the terminating event.

IT IS SO ORDERED this 7th day of January, 2025.

*[signature]*

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE